Argument not to exceed 15 minutes per side. Mr. Barber, you may proceed whenever you're ready. Have you reserved time, Mr. Barber? Yes, Your Honor, I would like to reserve three minutes of this. All right, we'll proceed from blowing up airplanes to Medicare regulations. Indeed we are, Your Honor. I will endeavor to do all I can. May it please the Court, my name is Keith Barber. I represent the appellate hospitals in this case. And this case does indeed involve very complex, something called an arcane and difficult to understand rules relating to Medicare reimbursement. But it really all comes down to the fact that the government claims that something transformed from a fringe benefit to a wage to a salary because of what pot of money it came out of, or the accounting mechanism by which the hospital paid the individuals this money. There are two distinct issues associated with this. In making that determination, just to stay with the bigger picture for a minute, I get the impression at least from the various cleanings that the hospitals that you're representing in this case are employing unusual or minority view ways of doing things. The vast majority of hospitals do things another way. Particularly related to the short-term disability issue, Your Honor, that's correct. The hospitals that triggered the issue in this case followed the unusual business practice of rather than paying an insurance company to pay short-term disability to their employees, If we're trying to figure out a way to calculate this wage index in a way that's applied equally and fairly nationally, what's the matter with the secretary deciding that she's not going to agree with your client's unusual ways of doing things? There are consequences that fall from those decisions. Well, it should be understood, Your Honor, those consequences don't just apply to the hospital that does them. It also applies to any other hospital in that wage index area, in that particular MSA for that hospital, because that's how it's calculated. It's all thrown into the same pot. So treating that one hospital differently and punishing it, perhaps for its unusual business practice, punishes everybody else in that metropolitan statistical area, such as Cincinnati, as well. So it goes beyond that. But the reason they can't do it or that they shouldn't do it is because the law requires that the wage index reflect the actual differences in wage costs between the regions. And when you match, for example, hours with those wage costs for some hospitals, but do not do so for the similar cost of short-term disability payments for other hospitals, the effect of that is to disadvantage the hospitals and all other hospitals that happen to be in that MSA, and to disadvantage those hospitals in the determination of those wage costs. And that's the problem, Your Honor, is the difference. There wasn't any surprise here in connection with the Secretary's position when your hospitals made the decision to utilize the method they used, right? I would say that there was a surprise for several reasons, Your Honor, particularly associated with the Baylor plan hours, because I think the guidance associated with that would suggest that those hours should be excluded because they're bonus hours. It's only if you interpret them as bonus hours, though. Haven't they had for decades the same treatment of Baylor hours? Well, you know, it's interesting, if you review the record, Your Honor, two different CMS attorneys referred to Baylor plan-related hours as bonus hours. What else are you going to call them, Your Honor? But that begs the question. The question is, hasn't there been a consistent practice in the way CMS treats Baylor hours? No, Your Honor, there is not. For example, if the hospital did the exact same thing that the hospitals in our case did related to Baylor hours, but simply backed those hours out before it did bother to turn in its initial cost report? Based on its methodology of reporting. Well, but if the hospital paid the employee in the same way, with reported additional hours, did the exact same thing, but simply thought, if you will, to remove those hours prior to filing the cost report, the record in this case shows that CMS would have accepted that. So why didn't they back them out? Well, they attempted to back them out during the correction process that the secretary has provided to do exactly that sort of thing. And at that point, the secretary refused to back them out. So this question comes down to not whether you include the hours, but when you do, or when you try and take them out. And once again, you're disadvantaging not only that hospital, but every other hospital in that metropolitan statistical area by this arbitrary approach. But isn't that part of the issue? Anytime there's a line going by an agency, there are going to be people on one side or the other of the line. I'm struggling with understanding the import of what you want to do. We've got this vastly complicated Medicare system. The need, the really significant need to maintain the integrity of the wage index and to maintain it in a way that everybody's on the same page. It seems to me that your argument is if I have a very different way of reporting or if I want to pay in an unusual method, the burden should be on the agency to look through the name of what I do to go backwards and to allocate what I'm doing to what I want to call it. I guess what I'm saying is it seems to me that you're placing a significant burden on the agency to accommodate your desire to report or to maintain your own books in a particular way. And how can we do that? I understand your argument, Your Honor, but that was kind of the same issue that the court faced in the Sarasota case. That was also a case involving an unusual business practice and the refusal of the secretary to… Wasn't that before there was a distinction between wage and the two-wage category? It's actually very similar, Your Honor, between the wage and the wage-related cost, yes. It was very much the same distinction of whether or not the additional tax benefit that the provider paid in that case was a fringe benefit or a direct wage. I'm asking you, wasn't that preliminary to this division between wages and wage-related costs? I don't believe it was. And it wasn't so much a wage-index case at that time. That wasn't as much the issue. But nonetheless, the secretary needed to accommodate the unusual business practice. Your Honor, it refers to… I guess what I'm struggling with is it's exactly the same thing. If the employee pays FICA, it's X dollars. If the employer pays FICA, it's X dollars. Those are the same X. Your Honor, it's exactly the same X if a hospital decides to pay an employee 16 hours for 12 hours of work, you know, to calculate how much money they're going to pay them. You get the same dollar figure involved that you would if you just inflated their shift differential, it's called, or just inflated it. But you don't have short-term disability, do you? Because in the short-term disability, you are paying a premium, which is a different dollar amount from if you pay out of your payroll and cover that employee directly. It's different money, right? It's probably a greater dollar amount, Your Honor. The hospital did this business practice change to save money, which ultimately saves the program money, too. And so the hospital is being penalized. And all the other hospitals in that MSA are being penalized for trying to use a better business practice in terms of how they're going to pay for their employee's short-term disability. I'm not sure I've seen the applicability of Sarasota since. They are—the dollar figures were exactly the same in how they were reported, how you report the exact same amount. It's a different issue from whether I am paying you for time that you work on a wage basis versus I'm going out to an insurance company and I'm paying what might be classified as fringes. I'm buying you an insurance policy and I'm paying a premium to do it. The first thing I would say, Your Honor, in answer to that is for the Baylor plan, it is exactly like that. It is exactly the dollar-for-dollar match that you're suggesting there. Okay. Going to the short-term disability issue, I understand your point. There is perhaps a little bit of a distinction there. But the point is that on average, the short-term disability cost for the hospital in paying the premiums to an insurance company versus doing it directly out of payroll has to be at least as much money to the insurance company, probably more because you're having to also pay for the profit of the insurance company and the administration. I guess my concern is I don't see how we can focus on the nickel and dimes of I'm saving this CMS, I'm saving this MSA a little bit of money because I'm reporting this unusual method. Because what we're talking about here is an agency which is due some form of deference. I think everyone agrees in this case it's Chevron deference. So they've drawn a line. And now it appears to me that your argument is, well, we want you who have to oversee the integrity of the wage index, have to check and make sure that the gap rules are being followed, have to get all of the wage information, which is kind of a four-year lag period. And now we expect you to come in and do the additional work made necessary by our decision that it's better for us to report this way. I don't see how a large, complex entity's organization and maintenance of something as large as a wage index, in accordance with your duty to defer to the method that they have determined to administer it, I don't see your argument that, no, they should have to go behind what we do and index through our hoops. I think you would make the system nonfunctional. If I may, Your Honor, yes, we expect the Secretary to honor the integrity of the wage index. That's what we're trying to do, to comply with the statutory requirement that the wage index reflect true differences in wage costs and not accounting differences. In terms of deference, the Secretary absolutely has the deference to do everything the same, that the Secretary conclude these hours at all hospitals but not some. Does it make any difference in your estimation of the outcome of this case whether we apply Chevron, Skidmore, or Howard? No, Your Honor. I really do not think that you're going to lose regardless of which one we use. Yes, Your Honor. All I need. Thank you. Good morning, Your Honor. Fred Bier, First Secretary Sebelius. May I please have the floor? I'm going to adjust my argument based upon some of the questioning in court. With regard to deference, and this is a difference between this case and Sarasota, is that in this case, the Secretary went through a notice of comment rulemaking. She did that back in 1993, repeated it again in 1994. This issue up again to discussion in 2003. In this case, the Secretary has gone through a notice of comment rulemaking. This is a substantive rule that is not entitled to Chevron deference. That differs from the case in Sarasota. In Sarasota, which we believe was incorrectly decided in any case, but there are significant factual and legal distinctions between that case and this case. In Sarasota, that case involved a 1982 wage index. That wage index did not go through, that specific issue did not go through a notice of comment rulemaking. The court focused on the interpreter of rules and the manuals that the Secretary utilizes. It did not apply the policy that she went through, the notice of comment rulemaking. There is a distinction there. As Judge Strang had mentioned, there was a difference between the impact of wages and wage-related costs. At the time that Sarasota was decided, only wages were included in the numerator of the fraction. Wage-related costs were completely excluded. Categorizing a cost as a wage or a wage-related cost was a significant difference because it was completely excluded if it was wage-related, whereas if it was wage costs, it was included. Ironically, the case that is most similar to the cases before the court is the Seventh Circuit's recent decision in Adventist-Glen Oaks. And counsel, aside from not even addressing that case before this court, has given this court no reason to cause a split in the circuits on this issue. This issue, the same arguments that counsel is making today were the exact same arguments citing the same exact cases for the same exact principles that were cited to the Seventh Circuit that were objected outright. The same issue was the paid hours issue, which is at issue here, related to two costs. The costs are slightly different between the specific costs that are at issue here and what was at issue in Adventist. But the paid hours issue, the policy, the substantive rule is the same rule that is applied with regard to all costs and would apply both to the costs at issue here and to the costs that were at issue in Adventist. And I think as the court has intimated in its questioning, this is a vast, vast, complex formula that is used in order to reimburse hospitals. And this is just one, the wage index is one minute part. You have a standardized amount, and with regard to the standardized amount, it's an average cost for all patient costs for all types of treatment. That is broken down into a labor and non-labor share. The labor share of that cost is adjusted for this specific purpose. There's also any number of other adjustments that are made to every single patient for every single treatment for every single hospital in the entire nation. And as we are, as we have the system right now, it takes approximately four years from the end of a cost here for the cost report to be filed, for it to be reviewed. We're not even talking about full audits. We're talking about vast majority of hospitals do not receive full, complete audits of their entire cost report. They're just reviewed and, you know, to check out to make sure the numbers are matching up. If the secretary is required to actually look back and go behind every single cost of every type of factor that goes into these computations, that four-year lag would be stretched out exponentially at that point. There's one point with regard to the bonus hours that I do want to discuss. With regard to, and I think Judge Strange made this point, but just so it's clear, with regard to the short-term disability hours that are issued here, the hospitals in this case are lumping together the term short-term disability pay. But when they use that term, they mean two different things by that. The majority of hospitals don't do a disability payment, like a salary payment, to the employee on short-term disability. They make a insurance premium cost, and I think you were addressing that, Judge Strange. They could have that as well. Correct. And there's special regulations that set forth the criteria, but the hospitals have conceded that they're not a self-insurance plan, and that's not an issue here. But that would be another way for them to satisfy the requirement and still set off the money and sustain from wages. Correct, and there would be no hours included. They do have that option. And I would also point out, you would ask counsel about, this certainly came as no surprise to the hospitals, and it certainly did come as a surprise to the hospitals, because the record reflects that for many, many, many years, up until the year at issue, I think 2005, the hospital, in fact, reported the hours correctly. And it wasn't until they had a consultant come in to see how they could increase their Medicare reimbursement, and a consultant looked at all different types of practices that they had, and they said, oh, if you back these hours now, you can have your wage index increased. So this certainly came as no surprise to them, because they were following the policy up until this period. In that same regard, just to try to put this case in perspective, do you know off the top of your head whether after this dispute arose, they've gone back, these hospitals, these outliers have gone back to calculating it the way the secretary would, so that the import of this case is limited to a small, discrete period of time and hospitals? I don't know that. I haven't looked. But also, counsel said, looked into me and referred to something in the record that reflected that a witness said that we know of other hospitals that back these out. Well, again, because other hospitals aren't correctly reporting something, it doesn't bind the secretary. She certainly can't find out every type of misapplication of regulations that's out there. And she's certainly not bounded, in a way, by the incorrect practices of other hospitals. I guess to the extent that she knows about them, she needs to go in and make the changes to the extent that those closures are still open. But also with regard to – there's some issue with bonus hours, and I do want to just briefly touch on that, because I can tell you that when I write both the Deventus-Glanos case and the district court's cases, I think they're both excellent opinions. I think they're very well-reasoned. But there was one statement with regard to bonus hours that did confuse me, and I know it took me multiple readings to understand what they were talking about. And what the sentence was, was the hours at issue are not similar to bonus hours because they don't account for a period where someone's paid for not working. And it's very confusing the way that is stated in the – I think the way it's written in the two decisions. But I think a better way of thinking about that, an example is if you – one of the examples that the Secretary uses in her manual provisions is pay in lieu of vacation. So you understand that if you're paid for a vacation day, that's paid for a specific day. When you're paid for in lieu of vacation, you're not being paid for a specific vacation day that you took. You're paid for not taking a vacation day. So there's an hour associated with the vacation day that you did take, but there's not an hour associated with the vacation day you're being paid for but didn't take. I don't know if I'm being clear. I'm glad you cleared that up. But if the court has no further questions for me, we would ask that the court affirm the district court here and follow the settled services. The only question I have is you don't have a position that the only time you can challenge this is before the election. Well, Your Honor, I do think that you can rule and affirm the district court's decision on an alternate basis, which is that – and I'm glad you brought that up because by proceeding in this fashion, what the hospitals here have done is they've sheltered the court from the complete disarray within the hospital community of their positions on this. The hospital community is not in agreement of whether paid hours should or should not be included. In the 2000 rule, the secretary had received many comments. Well, she opened it up to comments. Which is my question. That's the better way to do it. Correct. But is it the only way to do it? Well, I think the Sixth Circuit's footnote in a Michigan Department of Environmental Department v. Browning, that footnote that I cited, as well as the Parkview Medical Center case out of the D.C. Circuit, and the Ninth Circuit has, I think, multiple cases where they have suggested that you really need to challenge a policy like this that's in notice of rulemaking and comment rulemaking. You need to go and challenge that through the notice of rulemaking and commenting period. You need to submit comments during the rulemaking period. Does that position rise to the level of opinion or what do you know? I believe it does. And I believe that's what the Sixth Circuit's footnote indicated. And again, I think what's significant about that case is originally it was an unreported Sixth Circuit decision. And then the Sixth Circuit decided that this decision merited a reported decision, a published decision. I think under your precedent, it is a waiver issue if it is not raised during notice of comment rulemaking. But again, I think that the – Do you agree with Mr. Barber that the ultimate outcome here doesn't depend on the standard review? In other words, the same outcome under Chevron's people or not? I do agree that under any of the standards, the Secretary should prevail. But we do believe that there's a – Okay. Thank you very much. If there's no further comments, I have a question. Thank you. Mr. Barber. May it please the Court. Your Honors, there simply was no notice and comment rulemaking specific to these issues. There was no notice and comment rulemaking that said that if you pay employees extra money for working undesirable shifts by increasing their hours, you're going to have to count those hours. The same way with this irregular short-term disability act. Nothing that specific was promulgated. The position that you've heard here that the Secretary universally counts all paid hours is simply not true. As we have pointed out in our briefs, the Secretary excludes certain kinds of paid hours to include hours associated with bonus pay, to include hours associated with time to have for overtime. And those rules have been in existence for some time and are clear. That's right, Your Honor. They're clear. And the beauty of them is that they apply equally to everybody. It's not a case – You can't presume. They say, this is what's bonus pay, here's the rule, here's how you do it. Across time, it's always been that way. And now you want to say, but we are – what we're doing is bonus. Isn't that an interpretation that you want to add? It's an interpretation supported by an unanimous decision of the PWRB Review Board. It's an interpretation supported by CMS attorneys referring to it as bonus hours themselves, as we've stated in the record. And it's an interpretation applicable to common sense. The Secretary herself acknowledges that paying the bailer hours in this fashion has the practical effect of raising the per hour wage of those individuals. The Secretary's position is that this court should ignore that practical effect because the Secretary has ignored that practical effect. Well, we disagree with that because ignoring that practical effect unfairly cheats hospitals that happen to be in an MSA where some hospitals pay the bonus time or the bonus pay associated with working on several shifts in that fashion. Your Honors, in terms of – and I'm going to step in a little bit of risky territory here, I know – but try to answer the question of what the hospitals were doing later. Well, there was another court decision referred to in our briefs, the VA Health decision. It was vacated on settlement. But the hospitals were aware of that decision, and they were aware of the favorable settlement that the hospitals received in it. So from their perspective, they had a court decision supporting their interpretation of how short-term disability should be paid. All right. Thank you, Counselor. Case will be submitted.